IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Steve Burgess, 0148-39365,<br><br>Plaintiff,<br><br>v.<br><br>Deborah Zeight, Deputy Timothy Brown,<br>Deputy NFN Howard, Corr. Officer<br>NFN Wilkins, Sonya Moss, GCCD Head<br>Supervisor Nurse, and James Doriety;<br>Administrative Assistant Director GCDC,<br><br>Defendants. | CIVIL ACTION NO. 9:09-1884-RBH-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights while he was housed at the Greenville County Detention Center.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 1, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 2, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion for summary judgment on February 19, 2010.


- 1 -

Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff has filed a verified complaint[2] in which he generally alleges that he was subjected to bodily harm and improper medical treatment, all arising out of his arrest on May 17, 2009. Plaintiff alleges that he was booked into the Detention Center, even though he believes he should have been sent to a hospital emergency room for a checkup, and that the Defendants Brown, Howard and Wilkins neglected to provide him medical attention, refused to let him see the nurse on duty, and removed his cast and ace bandage and threw them in the trash. Plaintiff alleges that the Defendant Moss (a nurse) ignored his requests for assistance even though she knew that he had mental health issues, and the Defendant Zeight (a psychological supervisor) saw how "shaken and confused" he was due to not taking medication. Plaintiff alleges that it was approximately sixteen days before he saw "Dr. Martin" and received any medications, and that the Defendant Doriety (the Assistant Jail Administrator) caused his medical problems to be "worser" because he ignored and neglected his grievances and other requests for assistance.

In an attachment to his complaint, Plaintiff states that on May 17, 2009 he was "totally incoherent" and was "foaming at the mouth", rendering him incapable of even signing the

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



booking report. In yet another attachment to his complaint, Plaintiff states that, following his arrest, when he arrived at the jail he was "yanked" from the back seat of the police car by "two officers", which caused bruises on his arms, and that his face was also slammed into a window "giving me a black eye". Plaintiff also states in yet another attachment to his complaint that he had a broken knuckle which needed surgery, but that Wilkins did not let him see the nurse. Plaintiff alleges he suffers from anxiety, panic disorder, heart problems, high blood pressure, Alzheimers, depression, bi-polar disease, breathing problems, and chronic pain. Plaintiff states in additional filings to his complaint that he filed for medications, but that he did not receive the medical and health treatment he needed.

Plaintiff has also attached to his complaint copies of inmate request forms dated May 24, 2009, May 28, 2009 and June 15, 2009, respectively, wherein he complains about not receiving proper medical care. Plaintiff also states in these attachments to his complaint that he was treated with "brute force" upon his arrest, and that he is going to file a lawsuit. Plaintiff does not seek any specific relief in his complaint, other than to state that he believes "these people should pay". Therefore, it is assumed that Plaintiff is seeking monetary damages. See generally, Plaintiff's Verified Complaint with attached Exhibits.

In support of summary judgment in the case, the Defendant James Doriety has submitted an affidavit wherein he attests that he is the Assistant County Administrator in charge of overseeing the Greenville County Detention Center. Doriety attests that Plaintiff is a habitual offender who has been incarcerated at the Detention Center on numerous occasions, including being incarcerated at the Detention Center on May 17, 2009. Doriety attests that Plaintiff submitted an inmate request form to him on June 12, 2009, wherein he contended that he needed to see a mental



health doctor to receive his medication. Plaintiff also sent a written letter complaining about other medical problems. See Exhibit A to Doriety Affidavit. Doriety attests that he forwarded Plaintiff's concerns to the medical department at the Detention Center, but that by that time Plaintiff was already receiving treatment from the medical staff and had been referred to a psychiatrist. With respect to the "7th Grievance" Plaintiff submitted as an attachment to his complaint, dated June 26, 2009, Doriety attests that by that date Plaintiff had been evaluated by a psychiatrist and his medication ordered. Doriety attests that he normally defers medical decisions regarding inmates to the medical staff of the Detention Center, although he believes the other evidence submitted to the Court conclusively demonstrates that Plaintiff was provided extensive and comprehensive treatment by the medical staff at the Detention Center.

With respect to Plaintiff's claims of excessive force being used against him during his booking on May 17, 2009, Doriety attests that the Detention Center has a secure video camera not only in the booking cells but also in the sally port and main office of the booking area. Doriety attests that a review of these videos shows that at no time was Plaintiff "thrown around"; rather, the videos show that Plaintiff was escorted calmly into the booking area and placed in a booking cell. Doriety attests that Plaintiff was also escorted in a calm manner out of the booking area. Doriety attests that it is only while Plaintiff is in the booking cell itself that Plaintiff shows any aggression, as he proceeds to kick at the cell door numerous times. Additionally, Plaintiff was not "foaming at the mouth", incapacitated, or suffering while confined in booking. Further, while Plaintiff was wearing an ace bandage on his hand upon his arrival at the Detention Center, the video shows that, while the bandage becomes unraveled, it is still in Plaintiff possession when he leaves the booking area. See also, Exhibit B to Doriety Affidavit [Video]. Doriety attests that a photograph was taken



of the Plaintiff for identification purposes at the Detention Center, which is attached to his affidavit as Exhibit C. Doriety attest that he knows of no violation of Plaintiff's constitutional rights arousing out of his booking at the Detention Center. See generally, Doriety Affidavit, with attached Exhibits.

The Defendant Timothy Brown has submitted an affidavit wherein he attests that he is a Deputy with the Greenville County Sheriff's Department. Brown attests that on May 17, 2009 he and the Defendant Jonathan Howard (another Sheriff's Deputy) responded to a Walmart in Greenville, South Carolina in reference to an intoxicated shoplifter. Upon arrival at the Walmart, they were advised by Loss Prevention Officer Anthony McKinney that Plaintiff had attempted to steal a fishing rod, and that he had also opened a bottle of wine and taken several drinks from the wine while attempting to exit the store. See also, Attached Exhibit A (Incident Report). Brown attests that Plaintiff was seated on a bench, and that he had a disheveled appearance with a strong odor of alcohol. Brown attests that Plaintiff's head kept bobbing up and down as if he was having trouble holding himself steady, and that when he was asked to stand up, Plaintiff swayed and stumbled. Brown attests that he was unable to communicate with the Plaintiff, as he expressed wild mood swings and his speech was incoherent. Plaintiff was then placed under arrest, and the officers disposed of the bottle of wine.

Brown attests that during transit to the Detention Center, Plaintiff became increasingly verbally aggressive toward the deputies, telling them to pull over and take his cuffs off so they could "fistfight". Brown attests that Plaintiff also threatened to kick them and "beat the hell" out of them once they got to the Detention Center. Plaintiff also said he would kill both of them. However, Plaintiff offered no physical resistance, even when escorted into the Detention Center. Brown attests that no resistance or aggression was warranted or used during transport and booking



since Plaintiff offered no resistance, and that upon arrival at the Detention Center Plaintiff was placed in a large holding cell. However, he had to be immediately removed because he kept running at full speed and crashing into the holding cell door.

Brown further attests that, at the time of Plaintiff's arrest, he had an ace bandage on his hand and stated he had an injured finger. However, he did not request medical attention and had no apparent injuries that required medical attention. Brown also attests that, to his knowledge, Plaintiff did not have a bruise under his eye before or during the time Plaintiff was in his custody, nor was Plaintiff questioned about his charges during transport. Plaintiff was charged with shoplifting, two counts of threatening the life of a public official, disorderly conduct, and open container. See generally, Brown Affidavit, with attached Exhibit [Incident Report]. The Defendant Jonathan Howard has also submitted an affidavit wherein he attests to the same facts as are set forth in Brown's Affidavit. See generally, Howard Affidavit, with attached Exhibit [Incident Report].

Finally, the Defendant Sonya Moss has submitted an affidavit wherein she attests that she is a nurse at the Greenville County Detention Center. Moss attests that, upon Plaintiff's admission to the Detention Center, he was provided with an assessment of his health needs and general condition, including being observed and questioned about his medical problems, conditions, and medications prescribed. Further, an initial health screening inquiry was completed, a copy of which is attached to Moss' affidavit as Exhibit A. This exhibit shows that Plaintiff negatively responded to problems about his mental and physical health.

Moss attests that to receive medical care at the Detention Center an inmate must submit an inmate request form clearly stating his affliction. Moss attests that, although Plaintiff was admitted to the Detention Center without an active prescription for any medications, on May 21,



2009, he submitted a medical request concerning his medication and a broken finger that was giving him problems. That request was sent for review by mental health, where it was discovered from Plaintiff's medical records that he had not received medication in months and there was therefore "none upon which to start him." As for Plaintiff's request regarding his finger, Moss further attests that, unfortunately, Plaintiff's request regarding his finger was not received by the medical department. See attached Exhibit A.

Moss attests that on June 5, 2009, Plaintiff submitted another inmate request form marked "psychological", in which he again requested mental health medication and complained about a variety of medical problems. Moss attests that Plaintiff was referred to psychiatrist Dr. Ernest Martin for an examination. Plaintiff submitted another medical request form on June 14, 2009, again marked "psychological" and concerning his hand and medication, and on June 15, 2009, Plaintiff was prescribed Aricept (for symptoms of Alzheimer's) and Metoprolol (used to treat chest pain and hypertension). Plaintiff was thereafter evaluated by Dr. Martin on June 17, 2009, and was diagnosed with bipolar disorder, depression with psychotic features, Alzheimer's dementia by history, and anxiety disorder. Plaintiff was prescribe Trozodone (for depression and anxiety), and Clonazepam (trade name Klonopin) for anxiety. These medical records do not reflect any complaints from the Plaintiff concerning his physical condition. See attached Exhibit A.

On June 22, 2009, Plaintiff submitted another inmate request form concerning his medication. Moss attests that the Aricept prescription was ordered on June 19, 2009, and administration began on June 21, 2009. Administration of the Metoprolol began on June 18, 2009, and the Trozodone and Klonopin were ordered and administration of these medications began on June 28, 2009. While Moss concedes that there was a lag time in Plaintiff receiving his medication,



she attests that any delay from his evaluation to his receipt of medication caused no resulting medical issues. Moss further attests that Plaintiff requested to have his blood pressure checked and complained about chest pains and a cold and cough on June 23, 2009, but that upon examination Plaintiff stated that his chest pain was from the cold and that he did not need his blood pressure checked. Plaintiff was provided treatment for his cold and cough, and he did not request any further treatment from the nurse for his other ailments at that time. See attached Exhibit A.

Moss attests that on May 2, 2009, prior to his incarceration, Plaintiff fractured his finger and was provided treatment at the emergency department of the Greenville Hospital system. Moss attests that upon Plaintiff's incarceration on May 17, 2009, his finger was only wrapped with an ace bandage, and Plaintiff had no existing orders requiring the bandage. Moss attests that because of continued complaints Plaintiff made concerning his finger, an orthopedic consultation was requested by the Detention Center medical staff on August 24, 2009, and that as a result of that consultation, no new physician orders were issued and no follow up was needed. Moss further attests that no cast or bandage was required, and Plaintiff was instructed to treat any pain with over the counter medications. See also, attached Exhibit A.

Moss attests that, with respect to Plaintiff's complaints about not receiving his medication on August 19, 2009, Plaintiff's second dose of Klonopin was inadvertently not administered during the night rounds, although Plaintiff still received his Trozodone, which also helps to control anxiety. Ten days later, on August 29, 2009, Plaintiff complained that he had been given incorrect medication during that time, causing him to be ill, and he also requested that his blood pressure be checked. Moss attests, however, that there is no notation that Plaintiff received any medication other than what was prescribed for him and what he purchased from the canteen.



Moss attests that, when examined by the medical department, Plaintiff stated that his medical problems had improved and that no treatment was necessary. Plaintiff's blood pressure was found to be within normal range. See also, attached Exhibit A. On September 1, 2009, Dr. Martin recommended the tapering and discontinuation of Plaintiff's Klonopin, with appropriate monitoring for ten days. To assist with this transition, Plaintiff was prescribed Buspar (a non-barbiturate anti-anxiety medication) and Risperdal (for paranoia).

Moss attests that, although well versed in the polices of the Detention Center, Plaintiff submitted no inmate request form for medical attention on May 17, 2009, and that his first request was not submitted until May 22, 2009. Moss attests that at no time did Plaintiff complain to the medical department about a contusion to his eye allegedly suffered during his arrest and transport to the Detention Center, and that while Plaintiff complains in his complaint about charges he incurred for requesting services while incarcerated at the Detention Center, Plaintiff has not been charged for mental health services since a previous incarceration in November 2008. Moss further attests that, because Plaintiff's mental health symptoms are noted to be "mild" in his medical records, there is no medical reason for Plaintiff to be specifically assigned to the mental health ward at the Detention Center, nor is there any medical reason to assign Plaintiff to a bottom bunk. See generally, Moss Affidavit, with attached Exhibits.

In opposition to the Defendants' motion for summary judgment, Plaintiff has submitted copies of his Inmate Request forms from the Greenville County Detention Center (with handwritten notations by the Plaintiff written thereon), and various other medical records, some of which are dated after the date of his complaint.



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

With respect to Plaintiff's excessive force claim, it is unclear whether Plaintiff is arguing that he was subjected to excessive force during his arrest, upon his arrival at the Detention Center, or both. This is important insofar as, when considering an excessive force claim brought pursuant to 1983, a court should begin it's analysis by first identifying the specific constitutional right allegedly infringed. Graham v. Connor, 490 U.S. 386, 394 (1989). If the alleged excess use of force occurred during Plaintiff's arrest or seizure, his claim is evaluated under the Fourth Amendment. Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997) ["The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure'



of a person."], abrogated on other grounds, Wilkins v. Gaddy, No. 08-10914, 2010 WL 596513 (Feb. 22, 2010), citing Graham, 490 U.S. at 388. Thereafter, the Fourteenth Amendment's due process clause protects Plaintiff as a pre-trial detainee from the excessive use of force. Graham, 490 U.S. at 395 n. 10.

Given the scattershot nature of the Plaintiff's allegations, it is not exactly clear what Plaintiff's claim actually is. However, no matter what standard is used to evaluate Plaintiff's claim, after careful review of the evidence and arguments submitted, the undersigned finds and concludes that Plaintiff's excessive force claim is subject to dismissal under either standard. Plaintiff's alleges that, upon arrival of the jail, he was "yanked" from the back seat of the car, thereby causing "bruises" on his arms, and that he was "slammed" into a window, resulting in a black or bruised eye. Plaintiff also generally asserts that he was "beat" up and "thrown around", although it is unclear whether this conduct was allegedly committed by Brown and Howard, or by officials at the jail. Other than these conclusory claims in his complaint, however, Plaintiff has provided no evidence, medical or otherwise, to support these allegations. By contrast, the Defendants have provided an affidavit from a nurse who attests that, although Plaintiff was admitted to the Detention Center on May 17, 2009, he did not submit an inmate request concerning medical care until May 22, 2009, and that at no time did he ever complain to the medical department about a contusion to his eye allegedly suffered during his arrest and transport to the Detention Center. The Defendants have also submitted a copy of Plaintiff's Screening History Inquiry that was completed upon his arrival at the Detention Center, which reflects that Plaintiff advised the screener that he had no reason to see anyone from medical. The Inmate Request form Plaintiff subsequently submitted on May 22, 2009 referred only to his getting his "medication started" and to the fact that he has a "broke finger and knuckle", but again



says nothing about any black or bruised eye.

Neither of the incident reports submitted as exhibits reflect any excessive force, or indeed that any force was used on the Plaintiff at all during his arrest, and both of the arresting officers have submitted affidavits in which they state that no excessive force was used, and that neither office saw any type of bruise under Plaintiff's eye before or during his custody. The Defendants have also submitted copies of video tapes from Plaintiff's booking, showing Plaintiff being escorted calmly into the booking area. Plaintiff cannot make only general and conclusory claims of excessive force in his complaint, provide no supporting evidence, and expect to survive summary judgment, particularly in light of the substantial evidence, including medical and video tape evidence, showing that no excessive force was used. See Papasan v. Allain, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].

Concededly, Plaintiff is not required to show he suffered any significant injuries to succeed on an excessive force claim. Rather, he need only present evidence to show that force was used maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. Wilkins, 2010 WL 596513, at * 2; See also Ben v. Frazier, No. 08-3412, 2010



WL 883732 at * 4 (S.D.Tex. Mar. 11, 2010)[Applying Wilkins' standard to pretrial detainee]; Shaffer v. Balicki, No. 07-31, 2010 WL 891336 at * 4 (D.N.J. Mar. 10 2010[same]; Gray v. City of Hammond, Indiana, ___ F.Supp.2d ___, 2010 WL 797197 at * 12 (N.D. Mar. 4, 2010)[Applying Wilkins' standard to arrestee]. However, here there is no evidence to support Plaintiff's claim that any force was used against him at all, much less any excessive use of force. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Wilkins, 2010 WL 596513, at * 2 ["An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973); cf. Hudson v. McMillian, 503 US 1, 9 (1992)[Not "every malevolent touch by a prison guard gives rise to a federal cause of action"]. Therefore, Plaintiff's excessive force claim should be dismissed.

**II.**

With respect to Plaintiff's medical claim, in order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence.

The Defendants have submitted copies of Plaintiff's medical records from the relevant time period, showing that he was seen and provided treatment for his medical complaints. While Plaintiff is certainly dissatisfied with the amount and manner of treatment he received, none of the



information contained in these medical records supports Plaintiff's claims of constitutionally inadequate medical care, nor do Plaintiff's own exhibits provide support for such a claim. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]. The evidence submitted to the Court clearly shows that Plaintiff already had a broken finger when he was admitted to the Detention Center, and the medical records fail to show that any further treatment for this condition was required, or that any named Defendant failed to do something that should have been with respect to this injury. There is also no medical evidence, or indeed any other kind of evidence, to substantiate Plaintiff's claim of a bruised eye which required medical attention, and the medical records further show that Plaintiff was prescribed numerous and various medications for his complaints, that he was seen by both a physician and nurses, and that (contrary to Plaintiff's apparent contention) there was no established treatment regimen in place for the Plaintiff for any medical condition upon his admission to the Detention Center. Further, while Moss concedes in her affidavit that Plaintiff failed to receive a particular medication on one occasion, and that Plaintiff may not have received some other medications as quickly as he apparently desired, this evidence does not establish a violation of any constitutional right. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope



v. Pelzer, 536 U.S. 730, 739 n. 9 (2002); Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

In sum, the undersigned can discern no evidence of a constitutional violation in the evidence presented to the Court, and Plaintiff cannot simply rely on his conclusory claims and allegations to avoid dismissal of this case. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837. Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received was inadequate. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore his federal § 1983 medical claim is subject to dismissal. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].



## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 26, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

